NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**SPINEOLOGY, INC.,**
*Plaintiff-Appellant*

**v.**

**WRIGHT MEDICAL TECHNOLOGY, INC., A DELAWARE CORPORATION,**
*Defendant-Appellee*

---

2017-2388

---

Appeal from the United States District Court for the District of Minnesota in No. 0:15-cv-00180-JNE-FLN, Judge Joan N. Ericksen.

---

Decided:  July 6, 2018

---

RANDALL THOMAS SKAAR, Skaar Ulbrich Macari, P.A., Minnetonka, MN, argued for plaintiff-appellant.

ANTHONY JAMES FITZPATRICK, Duane Morris LLP, Boston, MA, argued for defendant-appellee.  Also represented by CHRISTOPHER S. KROON; DIANA SANGALLI, THOMAS W. SANKEY, Houston, TX.

---

Before DYK, O'MALLEY, and HUGHES, *Circuit Judges.*

DYK, *Circuit Judge.*

Spineology, Inc. ("Spineology") is the owner of U.S. Patent No. RE42,757 ("the '757 patent") covering a surgical device. Spineology sued Wright Medical Technology, Inc. ("Wright Medical") for infringement in the District of Minnesota. The district court found claims 15, 21–23, and 35 invalid as indefinite and granted summary judgment of non-infringement as to claims 33 and 34. Because the court correctly construed "body" and there is no infringement under this construction, we *affirm* the grant of summary judgment as to claims 33 and 34. Wright Medical agrees that this construction moots the issues of invalidity as to the remaining asserted claims (since these claims also include the body limitation, and accordingly, these claims are not infringed). We *remand*, with directions that the district court vacate the judgment of invalidity as to claims 15, 21–23, and 35, and enter judgment of non-infringement as to those claims.

## BACKGROUND

Spineology's '757 patent relates to an expandable reamer to be used in surgery that cuts "hollow chambers within bone that are larger in diameter than the external opening into the chamber. The tool has a distal end with external dimensions sized to be passed through the patient's anatomy to a point of entry into the bone." '757 Patent col.1 ll. 60–64. Wright Medical manufactures and sells its own expandable reamer known as the X-Ream. Spineology sued Wright Medical in the District of Minnesota, alleging infringement of claims 15, 21–23, 33, 34, and 35 of the '757 patent. Wright Medical countered that the term "activation mechanism" appearing in independent claims 15, 33, and 35, and by dependence in claims 21–23 and 34, was indefinite. Claim 15 reads in full:

An expandable reamer for use in bone and related tissue in a mammal comprising:

an elongated hollow body having a proximal end and a distal end, sized and configured to engage bone and related tissue in the mammal;

an elongated blade carrier having a proximal end and a distal end, the blade carrier disposed within the body;

a set of blades pivotally attached proximate the distal end of the blade carriers; the set of blades having at least a first retracted position relative to the body, the body having a maximum cross-sectional diameter transverse to a longitudinal axis of the body that is substantially at least as large as a maximum cross-sectional diameter of the blades in the first retracted position, and <u>a second fully expanded position having a diameter greater than the maximum cross-sectional diameter of the body; and</u>

<u>an manually actuated activation mechanism that moves the set of blades from the first retracted position to the second fully expanded position and any expanded position therebetween</u>.

'757 Patent col. 8 ll. 40–59 (emphasis added). Claims 21 through 23 depend from claim 15, and provide more detail about the reamer. Claim 33 is an independent method claim reading:

A method for creating a cavity in bone comprising:

drilling a bore in bone,

inserting an expandable reamer into the bore,

manually actuating an activation mechanism of the reamer that engages a blade carrier within the reamer such that linear motion of the blade

carrier drives a blade set pivotally attached to the blade carrier from a first retracted position relative to the body, the body having a maximum cross-sectional diameter transverse to a longitudinal axis of the body that is substantially at least as large as a maximum cross-sectional diameter of the blades in the retracted position to <u>a second fully expanded position having a diameter greater than the maximum cross-sectional diameter of the body and any expanded position therebetween</u>;

contacting the bone with the blade set in the any expanded position; and

rotating the expandable reamer such that the blade set cuts into the bone.

*Id.*, col. 10 ll. 13–32 (emphasis added). Claim 34 depends from claim 33. Finally, independent claim 35 also claims "[a]n expandable reamer for use in bone and related tissue in a mammal." *Id.*, col. 10 ll. 35–36. Relevant to this appeal, all the claims require the body have

a maximum cross-sectional diameter transverse to a longitudinal axis of the body that is substantially at least as large as a maximum cross-sectional diameter of the blades in the retracted position to a second fully expanded position [which] <u>h[as] a diameter greater than the maximum cross-sectional diameter of the body and any expanded position there between</u>.

*Id.*, col. 8 ll. 50–55, col. 10 ll. 22–28 (emphasis added). An embodiment of Spineology's device can be seen below.



*Fig. 1*

'757 Patent fig. 1. In this figure, the main shaft is labeled as 136, while the barrel is labeled 138. J.A. 38. The view port, 232, can be seen on the barrel.

During claim construction, the parties disputed the construction of the terms "activation mechanism" and "body." On August 20, 2016, the court issued a *Markman* order ruling that the term "activation mechanism" was indefinite as used in claim 15, in dependent claims 21–23, and in claim 35. The court found that the term "activation mechanism" was a means-plus-function limitation, with a discernable function, but no clear corresponding structure for claims 15 and 35. The court noted that that the term "activation mechanism" was defined differently in different claims. For instance, while claim 18 states

that "the activation mechanism is a moveable cannulated shaft having linear movement along the body," '757 Patent col. 8 l. 67–col. 9 l. 2, claim 20, which depends from claim 18, states that "the activation mechanism is a blade control knob constrained within the proximal end of the body," *id.*, col. 9 ll. 11–13. Likewise, claim 38, which depends from claim 35, states that "the activation mechanism is one of a pair of shafts having linear movement along the body," *id.*, col. 10 ll. 61–67, while claim 40, which depends from claim 38, states that "the activation mechanism is a blade control knob," *id.*, col. 11 ll. 4–6.

Because the other dependent claims, in combination with the specification, provided conflicting information about the activation mechanism, the court held that "[i]n light of the inconsistencies between the claims and the written description as to what constitutes the activation mechanism, the Court is unable to discern a clear link between a structure or structures and the function." J.A. 29. The court held claims 15, 21–23, and 35 indefinite. The court declined to construe body at that time, "except to state that 'body' does not include the blade control knob." J.A. 22.

After the *Markman* hearing, on cross-motions for summary judgment for infringement of claims 33 and 34, the court determined that the term "body" which appears in all the asserted claims means "the hollow structure that houses the blade carrier and that receives a knob or wheel: 'body' includes the barrel." J.A. 46. This construction doomed Spineology's infringement allegations, because it is undisputed that, when fully expanded, the blades of Wright Medical's X-Ream do not have a diameter greater than the barrel. Because the X-Ream could not infringe Spineology's patent under a construction of body that included the barrel, the court granted summary judgment for Wright Medical of non-infringement of claims 33 and 34. The court also dismissed without prejudice Wright Medical's counterclaims seeking, inter

alia, a declaration of absolute and equitable intervening rights resulting from reissue proceedings of the patent.

Spineology appealed the judgment of non-infringement of claims 33 and 34 and the judgment of indefiniteness as to claims 15, 21–23, and 35. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We first address the construction of the term "body." Since there is no extrinsic evidence relevant to claim construction, we review claim construction under a de novo standard. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). As noted, the district court construed body to include the barrel and the shaft, i.e., "body includes the barrel." J.A. 46. The written description does not use the term "body" and thus does not provide relevant guidance. Spineology argues that, while the shaft is part of the body, the barrel is not part of the body.

We agree with the district court that the term "body" must include the barrel. The dependent claims detail two limitations that inform our construction of "body." First, claim 16 and claim 36 explain that the "body" must be a structure that can include a "view port." '757 Patent col. 8 ll. 60–61; col. 10 ll. 56–57. Second, claims 20 and 40 provide that the "body" must be a structure that can constrain a blade control knob "within the proximal end of the body." '757 Patent col. 9 ll. 11–13; col. 11 ll. 4–6.

The specification makes clear that the structure which includes these features is not the shaft, as would be required under Spineology's construction of body, but the "enlarged barrel" at the proximal end of the reamer. The "First Embodiment," shown in Figs. 1–9, and the "Second Embodiment," shown in Figs. 10–17, are the only two embodiments pictured in the patent. The First Embodiment, pictured above, includes a "view port," labeled 232,

on the barrel, not along the shaft. *See, e.g.*, '757 Patent fig. 1. Similarly, in Figure 10, showing the Second Embodiment, the view port 107 is clearly located along the length of the barrel—not along the narrower cylindrical shaft as would be necessary under Spineology's construction. '757 Patent fig. 10. In both embodiments, the blade control knob, which claim 20 details is constrained within the proximal end of the body, is clearly constrained within the barrel, not the shaft.

Thus, Spineology's proffered construction of body would mean that the term "body" has one meaning in certain claims and a different meaning in other claims. This counsels strongly against interpreting body to only include the shaft, as claim terms "cannot be interpreted differently in different claims," and "must be interpreted consistently." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (citing *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 632 (Fed. Cir. 1987)). A construction of body that includes the barrel comports with the preferred embodiments and allows the term "body" to have a consistent meaning across the independent and dependent claims.

While Spineology makes two arguments to the contrary, neither is convincing. First, Spineology contends that "[i]t was improper for the court to use unasserted claims to teach attributes of 'body' not claimed in the asserted claims." Appellant Br. 27. However, no such principle exists. Indeed, our decision in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc), made clear that "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." Second, Spineology argues that the body must be "sized and configured to engage bone," and that the barrel is too large to satisfy this limitation. However, Spineology misreads the claims, as the claim language "sized and configured to engage bone" describes the "distal end" of

the body, not the proximal end, where the barrel is located.

Given the intrinsic evidence from the claims and the specification, we agree with the lower court that the "body" must include both the shaft and the elongated barrel. Accordingly, we affirm the summary judgment of non-infringement as to claims 33 and 34.

Wright Medical agrees that we need not reach the issue of indefiniteness if we affirm the court's construction of the term "body." This is so because all the claims found to be indefinite also include the "body" limitation, and the parties agree that Wright Medical's accused products do not infringe these claims under the construction of "body" that we have adopted. Indeed, it is undisputed that, when fully expanded, the cross-sectional diameter of the blades of the X-Ream is smaller than the maximum cross-sectional diameter of the "body," and thus, cannot infringe Spineology's patent, which requires the blades to fully expand to a diameter greater than the maximum cross-sectional diameter of the "body."

We accordingly vacate the judgment of indefiniteness as to claims 15, 21–23, and 35, and remand with direction that the district court vacate its own determination of invalidity. We also remand with directions that the court enter judgment of non-infringement as to those claims.

### AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

COSTS

Costs to Wright Medical.